DAVID C. SCOTT and wife, ESTHER SCOTT, Appellants, v. COLUMBIA GULF TRANSMISSION COMPANY and J. P. Neill Construction Company, Appellees.—405 S.W.(2d) 784.

Middle Section. December 3, 1965.

Rehearing Denied February 25, 1966.

Certiorari Denied by Supreme Court July 18, 1965.

Shelton & Shelton, Columbia, for appellants.

William C. Keaton, Hohenwald, R. R. Haggard. Jr., Waynesboro, for appellees.

HUMPHREYS, J. Scott and wife sued Columbia Gulf Transmission Company and J. P. Neill Construction Company for damages for acts done by defendants in constructing a natural gas transmission line across their two farms.

The damage to the farms was described in the declaration as follows:

### "Tract No. 1

(1) Took for right of way purposes a right of way in excess of that granted by the Plaintiffs, in some places as much as one hundred sixteen (116) feet, or as much as fifty (50) feet more than agreed upon.

(2) Destroyed the Plaintiffs' growing crop over the sixty-six (66) feet right of way agreed to, as well as portion of the Plaintiffs' farm which was not agreed to.

(3) Removed the Plaintiffs' fertile top soil and in its place left unfertile soil, clay and large rocks on the surface of the ground.

(4) Scattered large rock and gravel over portions of the Plaintiffs' field off of the right of way which had been agreed upon.

(5) Left the Plaintiffs' soil, both on the right of way which had been agreed upon and off of it, unlevel and rough and in such a condition that it is difficult, if not impossible, for the Plaintiffs to cultivate said land with their normal farm machinery.

## Tract No. 2

(1) Took for right of way purposes a right of way in some places of as much as two hundred sixteen (216) feet more than agreed upon.

(2) Destroyed the Plaintiffs' growing crop over the sixty-six (66) foot right of way agreed to, as well as portions of the Plaintiffs' farm which was not agreed to.

(3) Removed the Plaintiffs' fertile top soil and in its place left unfertile soil, clay and large rocks on the surface of the ground.

(4) Scattered large rock and gravel over portions of the plaintiffs' field off of the right of way which had been agreed upon, said rocks being scattered by force of blasting operations carried on by the Defendants over an area of several hundred feet from the pipeline; said blasting being of sufficient force to break windows in the Plaintiffs' tenant house which was located approximately three hundred (300) yards from said blasting.

(5) Left the Plaintiffs' soil both on the right of way which had been agreed upon and off of it, unlevel and rough and in such a condition that it is difficult, if not impossible, for the Plaintiffs to cultivate said land with their normal farm machinery.

(6) Destroyed rock levees which the Plaintiffs had built, which has caused erosion both on and off of the right of way, as well as a field of the Plaintiffs below the pipeline.

(7) Destroyed a gate of the Plaintiffs which leads to the tenant house on the farm and did not replace it in the manner which it was prior to the construction work of the Defendants.

(8) Left large portions of the Plaintiffs' farm, both on and off of the right of way, in a barren condition so that the soil has eroded to such an extent that there are large ditches throughout the Plaintiffs' farm.

## V.

Before said construction and trespasses above described, Plaintiffs had full use of both tracts above described for farm purposes; said soil was fertile and productive and suitable for the Plaintiffs to carry on a profitable farming operation. Since said construction and trespasses and the damages resulting therefrom, portions of both tracts of the Plaintiffs' property above described have been rendered poor and unproductive and unprofitable for the plaintiffs to use in their farming operations. In addition to the damages already sustained by the Plaintiffs, the erosion brought about by the action of the Defendants on both tracts, particularly Tract No. 2, will continue and further destroy the usefulness of said farm." Tr. pp. 7, 8, 9.

The declaration admitted plaintiffs' grantors had conveyed Columbia Gulf Transmission Company's predecessor in title a right-of-way and easement to construct and operate pipelines over Tract No. 1, described in the

declaration, and that they had made a similar conveyance with respect to Tract No. 2, also described.

The declaration, in essence, alleged further that while the defendant Transmission Company had bought and paid for the right to construct its pipelines across their property, that certain of the damage done was outside an agreed right-of-way width of 66 feet, and in violation of the obligation imposed by the easement instrument to bury the pipeline to a sufficient depth so as not to interfere with the cultivation of the soil, etc.

At the trial, defendants moved the court to limit the proof of damage to that done to crops and fences, contending that by virtue of the easements these were all the damages plaintiffs could recover.

Plaintiffs responded to this motion with three primary contentions which were, (1) that the easements were not subject to the construction placed on them by the defendants, but contemplated that further damage other than to crops and fences would likely be committed in the construction of additional pipelines, the easements being multi-line easements; (2) that the easements were ambiguous and so plaintiffs should be permitted to show that there was an oral agreement that damage done, in addition to the damage to crops and fences, would be paid for; and (3) that the contracts were so onerous and unconscionable as not to be enforceable in the administration of justice and that in any event plaintiffs were entitled to damage done which was not in the contemplation of the easement instruments.

The trial judge sustained the defendants' motion, and limited the proof of damage to that done to crops and

fences. This damage was stipulated to be $250.00, and verdict for this was returned.

A motion for a new trial was made more clearly delineating the contentions of plaintiffs, and when this was overruled this appeal resulted. In this Court, the plaintiffs rely upon these three major propositions for a reversal, all made by proper assignment of error and citation of authority.

The pertinent portions of the easements are as follow:

Tract No. 1.

"TO HAVE AND TO HOLD unto the Grantee, its successors and assigns, with ingress to and egress from the premises for the purposes herein granted.

The said Grantor is to fully use and enjoy said premises except for the purposes herein granted to the said Grantee and provided that said Grantor shall not construct or permit to be constructed any house, structures or obstructions on or over or that will interfere with the construction, maintenance or operation of any pipe line or appurtenances constructed hereunder and will not change the grade of such pipe line.

Grantee hereby agrees to bury the pipelines to a sufficient depth so as not to interfere with cultivation of the soil and agrees to pay for any damage to growing crops and fences which may arise from the construction, maintenance and operation of said lines. Said damage, if not mutually agreed upon, shall be ascertained and determined by three disinterested persons, one thereof to be appointed by said Grantor, one to be appointed by the Grantee, its successors or assigns, and the third to be chosen by the two persons appointed as aforesaid.

The written award of such three persons shall be final and conclusive.

It is mutually understood and agreed that this agreement as written covers all the agreements and stipulations between the parties and that no representations or statements oral or written, have been made modifying, adding to, or changing the terms hereof.

It is understood and agreed that the sum of _____ Dollars per rod as damages in full will be paid to the Grantors herein by the Grantees herein before the said pipe line is laid, and the Grantors herein hereby agree that said sum of _____ Dollars per rod will be accepted by said Grantors as full and complete settlement for any and all damages (real or alleged) occasioned by the construction of said pipe line on and across the above described land." Tr. pp. 11-12.

Tract No. 2.

"TO HAVE AND TO HOLD unto the Grantee, its successors and assigns, with ingress to and egress from the premises for the purposes herein granted.

The said grantor is to fully use and enjoy said premises except herein granted to the said Grantee and provided the said Grantor shall not construct or permit to be constructed any house, structures or obstructions on or over or that will interfere with the construction, maintenance or operation of any pipe line or appurtenances constructed hereunder and will not change the grade of such pipe line.

Grantee hereby agrees to bury the pipe line to a sufficient depth so as not to interfere with cultivation of the soil and agrees to pay for any damage to growing crops

and fences which may arise from the construction, maintenance and operation of said lines. Said damage, if not mutually agreed upon, shall be ascertained and determined by three disinterested persons, one thereof to be appointed by said Grantor, one to be appointed by the Grantee, its successors or assigns, and the third to be chosen by the two persons appointed as aforesaid. The written award of such three persons shall be final and conclusive.

It is mutually agreed and understood that this agreement as written covers all the agreements and stipulations between the parties and that no representations or statements, oral or written, have been made modifying, adding to, or changing the terms hereof.

It is understood and agreed that the sum of_____ Dollars per rod as damages in full will be paid to the Grantors herein by the Grantee herein before the said pipe line is laid and the Grantors herein hereby agree that said sum of_____Dollars per rod will be accepted by said Grantors as full and complete settlement for any damages (real or alleged) occasioned by the construction of said pipe line on and across the above described land.'' Tr. pp. 15-16.

Plaintiffs' contention they are to be paid for all damage occasioned by the construction of the pipe line, both that within a normal easement right-of-way and that which may have been done outside of such a right-of-way, and that this damage is not limited to growing crops and fences, arises by reason of the stipulation found in both easements to this effect:

''It is understood and agreed that the sum of_____ Dollars per rod as damages in full will be paid to the

(Grantors herein by the Grantee herein before the said pipe line is laid, and the Grantors herein hereby agree that said sum of_____Dollars per rod will be accepted by said Grantors as full and complete settlement for any and all damages (real or alleged) occasioned by the construction of said pipe line on and across the above described land." Tr. pp. 11-12.

(The same provision appears in the easement over Tract 2.)

██ The trial court was of opinion this stipulation was not a promise to pay "for any and all damages (real or alleged) occasioned by the construction. * * *" for a pipe line across the plaintiffs' property, but that the stipulation constituted only a present agreement between the parties as to the amount of damages to be paid for the pipe line then to be built. The trial judge reasoned that since the stipulation was clearly in the present tense, and furthermore was with respect to a particular pipe line in the present tense, and since the sense of the stipulation is to the effect that it is to be executed and so fulfilled and discharged by the payment of a particular sum of money for particular damage done with respect to a particular pipe line, it could not be susceptible to the construction contended for by plaintiffs, that it applies to future pipe lines.

██ We agree with the trial judge, that this is the only construction the stipulation is subject to and over-rule the assignments of error with respect to this proposition. It is so well settled as not to require the citation of authority that even onerous agreements will be enforced according to their plain meaning where fairly entered into (as these easements evidently were as there

is no allegation of overreaching or fraud or unfair advantage taken).

■ With respect to the second contention that the easements are ambiguous and plaintiffs should have been permitted to prove an oral agreement to pay for damage other than to crops and fences, we are of opinion this contention is not sound. This contention is based on two propositions: (1) That since there are blank spaces in the paragraph last copied above with respect to the sum of money that would be paid under that paragraph, the contract is incomplete and subject to elucidation by parole. This contention is not good in our opinion because as the trial judge held and as we have agreed this particular paragraph by its clear language was solely for the purpose of fixing and settling the amount of damages payable under the easement contract for the pipe line to be immediately constructed, and was fully executed and discharged by the payment of damages at the time of this construction. So, its blank spaces have no relevancy to the remainder of the contract and cannot be fastened onto as an excuse to avoid the Parole Evidence Rule.

■ The easement contract forms were obviously furnished by the grantees, and although they do grant broad rights for what now would appear to be a quite small consideration, since these agreements were freely entered into by the parties with no fraud or overreaching or undue advantage taken, being made at arm's length so to speak, and since the stipulations and provisions of the agreements are plain and clear and easy to understand, we think it would have been a violation of the Parole Evidence Rule to have permitted plaintiffs to prove a collateral or contemporaneous oral agreement qualifying or limiting the terms of the written one. Especially in

view of the express provisions in the contracts that there are no other such agreements or understandings.

It is with respect to the third contention that we find ourselves in disagreement with the trial court. This is, that plaintiffs' declaration alleges damage done to their property beyond the scope of the rights granted the defendant Transmission Company, and that they should have been allowed compensation for this damage. We find ourselves in agreement with plaintiffs-in-error in this.

■ Although the easements allow the construction of other pipe lines across plaintiffs' property than that which was in contemplation at the time the easements were granted, we think it must be their sense and meaning that plaintiffs' real property will not be occupied and used and damaged beyond the extent contemplated and to be expected in the normal, proper enjoyment of such an easement by the construction of a pipe line. We think this is implicit in the right-of-way agreement in the granting clause, which expressly contemplates "routes" over which the pipe line will be laid, and so fixes the area in which the easement can be exercised without liability for damage other than to crops and fences, and for failure to replace the topsoil, as we will mention further on. In order to hold otherwise, we would be required to say that as the right-of-way agreement places each entire tract under an easement for pipe lines, the defendant Transmission Company could go upon and occupy each entire tract, rather than a route across them. We do not think from reading the agreements the parties intended any such thing.

■ It is settled law in Tennessee that if a landowner suffers damage to his land that neither party had any

reason to anticipate at the time of the granting of the easement or the condemnation of the land, and the possibility of which, if suggested, would have been rejected as speculative and conjectural in a condemnation proceeding, the landowner may be compensated for such damage in a subsequent action. Jones v. Oman, 28 Tenn. App. 1, 184 S.W.2d 568, 571; East Tennessee Natural Gas Co. v. Peltz, 38 Tenn. App. 100, 270 S.W.2d 591, 604; Morgan County v. Neff, 36 Tenn.App. 407, 256 S.W.2d 61, 63; Carter County v. Street, 36 Tenn.App. 166, 252 S.W.2d 803.

 Since this is the law, and since we are of opinion the declaration alleges damage to plaintiffs' real property beyond the contemplation of the right given, in the construction of this particular pipe line over the particular route chosen for its construction, the judgment of the Circuit Court must be set aside and the case remanded for a new trial on the issue of the damage done to plaintiffs' property outside the route of the pipe line and that area reasonably required to be occupied in the construction of the pipe line.

 In addition, since the right-of-way agreements provide that plaintiffs are to use and enjoy their farm property fully except for the purposes granted, and provide further that the grantee shall bury the pipe line to a sufficient depth so as not to interfere with cultivation of the soil, which contemplates such reasonable occupancy and exercise of the easement rights as will least interfere with the grantors' reserved right to cultivate this area, the inquiry at the new trial should extend to such damages as plaintiffs have sustained by the Transmission Company's failure to exercise its easement in this manner. In other words, since it is the purpose of

this right-of-way agreement to allow the Transmission Company to construct and maintain its pipe lines under circumstances and conditions and in a manner that will least interfere with the plaintiffs' right to cultivate and occupy and enjoy his farm land above the buried pipe line, the Company has an obligation to construct and to maintain its pipe lines in such a way as to permit both parties to enjoy the use of the property reserved to each particular party. This is implicit in the provision for burying the line so as to permit cultivation. To the extent that the Transmission Company has negligently and wrongfully, or even wilfully, violated this obligation, it would be and is liable in damages therefor to plaintiffs. And, while it is true there is no general allegation in the declaration that the pipe line was not laid in a workman-like manner, there are specifications of particular damage done which would prove this to be the case if they are true.

Having confidence in the ability of the learned trial judge to define the issues and to limit the inquiry as to damages so as to do justice to both parties, and to allow a recovery for only that damage done which was not within the contemplated scope and effect of the right-of-way grants, and to such damages as may have flowed, if any, from the Transmission Company's failure to bury the pipe as reasonably contemplated by the contract, we remand the cause for a new trial on these issues alone. The issue with respect to the damages for damage to crops and fences will not be retried as by a stipulation of the parties these damages were fixed by the jury at $250.00.

Shriver and Puryear, JJ., concur.

A petition to rehear was denied.